# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| TERENCE DELLY, | No. 4:19-CV-01580 |
| Petitioner, | (Judge Brann) |
| v. | |
| WARDEN DOUGLAS K. WHITE, | |
| Respondent. | |

## MEMORANDUM OPINION

### DECEMBER 17, 2019

Presently before the Court is Petitioner Terence Delly's petition for writ of habeas corpus brought pursuant to 28 U.S.C. § 2241, challenging an institutional disciplinary decision that resulted in, *inter alia*, a loss of good time credits.[1] Respondent submitted an Answer,[2] and Petitioner has now filed a reply.[3] For the reasons that follow, the Petition will be denied.

## I.  BACKGROUND

Petitioner is presently incarcerated at the Low Security Correctional Institution ("LSCI") at Allenwood in Allenwood, Pennsylvania, and has a projected release date of May 6, 2021.  ECF No. 7-1 at 6.

---

[1] ECF No. 1.
[2] ECF No. 7.
[3] ECF No. 8.

On August 8, 2018, while Petitioner was incarcerated at the Federal Correctional Institution at Schuylkill, Satellite Camp Prison, in Minersville, Pennsylvania, Incident Report No. 3155698 was issued charging him with a violation of Bureau of Prisons ("BOP") Codes 200, escape from a non-secure facility, and 299, disruptive conduct. The incident report written by Special Investigative Services Technician Ryan Price provides as follows:

> On August 7, 2018, at approximately 1:17 PM, I was conducting an interview in reference to case number SCH-18-0165, during my interview with inmate Delly, Terence, Reg. No. 54220-037, he admitted to leaving the Satellite Camp Prison and had direct knowledge of trails leading to state route 901. Specifically, Delly stated: "I haven't left recently but when I did I always came back. I left to bring food back." Attached to this incident report are photographs of him leaving the institution grounds as visually captured on trail camera FPS number 0213102248. The trail camera was hidden on institution grounds, and was positioned in a manner to visually document inmates exiting institution grounds at the property line. Specifically, Delly was visually depicted on the trail camera walking off institution grounds on June 27, 2018 at 12:59PM. The visual depiction of Delly captured on the trail camera photograph was of a high quality. I easily identified Delly as the inmate who was photographed leaving the institution grounds. Delly was positively identified escaping the open minimum security institution at the satellite camp prison when he departed institution grounds without staff's permission.[4]

On August 28, 2018, at approximately 4:40 p.m., the reissued incident report was delivered to Petitioner.[5] Petitioner was advised of his right to remain silent during the disciplinary process.[6] He was shown a photograph of him taken by the

---

[4] ECF No. 7-1 at 11.
[5] *Id.*
[6] *Id.*

camera and stated that it was not him. He declined to make any further statement. He also declined to request any witnesses.[7] Per the incident report, the investigating staff member referred the incident report to the Unit Discipline Committee ("UDC") for a hearing.[8]

On August 29, 2018, the initial hearing was held before the UDC.[9] At the hearing, Petitioner stated that he understood his rights and that the "report is completely false."[10] The UDC referred the case to the Discipline Hearing Officer ("DHO") and recommended appropriate sanctions.[11] Petitioner was advised that day of his rights before the DHO.[12] Petitioner did not request a staff representative or witnesses in the proceedings before the DHO.[13]

On August 30, 2018, the DHO convened the hearing.[14] At the hearing, Petitioner did not request a staff representative or witnesses and stated that he understood his rights and was ready to proceed. Id. Petitioner testified that Section 11, the description of the offense, was inaccurate, and that he "didn't do it." In addition, Petitioner submitted a written statement to supplement his verbal testimony, which provides:

---

[7] *Id.*
[8] *Id.*
[9] *Id.*
[10] *Id.*
[11] *Id.*
[12] *See id.* at 7.
[13] *See id.* at 9.
[14] *See* ECF No. 7-1 at 15.

3

> The shot is false.  A.  Shot says, staff became aware of the incident on 08/08/18.  Why was I taken from the camp to the SHU 07/16/18 around 11:45 PM.  B.  Shot says, the picture of me is of high quality.  It's not of high quality, I've never [met] SIS Price before so how could he positively identify me.  Also for him to give a exact date and time why aren't the pictures time and date stamped?  C.  Shot says, I left the June 27, 2018 at 12:59 PM in the afternoon.  The picture is of a person at night clearly.  Why would I have a flashlight in the afternoon and a skullcap on in the summer.  That's obviously a photo he just put together foot.  D.  Shot says, I had knowledge of the trails leading to 901.  Knowledge of something and actually committing [an] act are two separate things.  I'm charged with a escape.  Policy in the law library for an escape is to leave a secure facility and miss multiple counts.[15]

Other evidence presented at the hearing included the color photograph dated June 27, 2018 and time-stamped 12:59 a.m.; the Federal Bureau of Prisons inmate photograph of Petitioner; satellite map of FCI Schuylkill institutional grounds on which the location of the trail camera was marked to depict the location as off institutional grounds; and investigative report, which includes the statement by Petitioner that he had previously left grounds before but always returned.[16]

Based on all the evidence, the DHO determined that Petitioner committed the prohibited act of escape from a non-secure facility in violation of Code 200.[17]  The DHO relied upon the incident report, the BOP's inmate photo of Petitioner, a comparison of that photo to the trail camera photo, and the satellite map of the FCI Schuylkill grounds.[18]  The DHO also noted that he considered Petitioner's

---

[15] *Id.*
[16] *Id.* at 16.
[17] *Id.*
[18] *See* ECF No. 7-1 at 17 (DHO report).

statements that he did not escape from the satellite camp but gave greater weight to the reporting officer's written statement including the information contained in Section 11 of the incident report.[19] In addition, the DHO noted that staff became aware of the alleged misconduct on August 7, 2019, and the original incident report was written on August 8, 2019, but was rewritten on August 28, 2019 in order to provide Petitioner with proper notice of the alleged misconduct.[20] Finally, the DHO noted that the trail camera photo is timestamped as 12:59 a.m. and not 12:59 p.m. as noted in the incident report.[21] The DHO concluded that the incident occurred at 12:59 a.m. based on the timestamp as well as the depiction in the photo of Petitioner holding a flashlight.[22]

The DHO sanctioned Petitioner with a loss of twenty-seven (27) days of good conduct time, 30 days of disciplinary segregation, which was suspended pending 180 days of clear conduct, a $300 monetary fine, as well as a loss of certain privileges for 4 months.[23] The DHO found that these sanctions were warranted because "[e]scaping from a non-secure facility jeopardizes the security and good order of the institution."[24] In addition, the DHO explained that the sanctions were imposed to deter future misconduct and demonstrate that engaging in misconduct

---

[19] *Id*. at 17.
[20] *Id.* at 16, 17.
[21] *Id.* at 17.
[22] *Id.*
[23] *Id.* at 18.
[24] *Id.*

5

will prolong the Petitioner's period of incarceration.[25] The DHO then advised Petitioner of his right to appeal.[26]

After appealing the DHO's decision through the administrative remedy process, Petitioner filed the instant habeas petition and supporting brief.[27] In it, Petitioner argues that (1) the DHO was not impartial, (2) there is no reference to the relied upon satellite map in the incident report, (3) the incident report describes the incident as occurring at 12:59 p.m. whereas the visual depiction in the trail camera photo appears to have occurred in the evening when it is dark, (4) the incident report was untimely, which prejudiced his defense, and (5) the use of a confidential informant did not comport with due process.[28] Petitioner requests that the DHO decision be set aside and remanded with the instructions for the Bureau of Prisons to expunge the incident report and to reinstate the twenty-seven (27) days of good conduct time he was docked.[29]

## II. DISCUSSION

### A. Legal Standard

A habeas corpus petition is the proper mechanism for a federal prisoner to challenge the "fact or duration" of his confinement, including challenges to prison

---

[25] *Id.*
[26] *Id.*
[27] ECF Nos. 1, 2.
[28] *See* ECF No. 2 at 8-12.
[29] *See id.*

disciplinary proceedings, that affect the length of confinement, such as deprivation of good time credits.[30] A challenge to a disciplinary action resulting in the loss of good conduct time is properly brought pursuant to § 2241, "as the action could affect the duration of the petitioner's sentence."[31]

B. Analysis

Petitioner is challenging the result of a prison disciplinary hearing where he was found guilty of violating Code 200, for escaping a non-secure facility. For this violation, Petitioner was sanctioned with the loss of twenty-seven (27) days of good conduct time by the DHO.

Prisoners are guaranteed certain due process protections when a prison disciplinary proceeding may result in the loss of good time credits.[32] The due process protections afforded an inmate must include (1) a written notice of the charges at least twenty-four hours prior to a hearing; (2) an opportunity to call witnesses and present evidence in his defense; (3) an opportunity to receive assistance from an inmate representative; (4) a written statement of the evidence relied on and the reasons for the disciplinary action; and (5) an appearance before an impartial decision making body.[33] Additionally, the revocation of good time only

---

[30] *See Preiser v. Rodriguez*, 411 U.S. 475, 498–99 (1973); *Muhammad v. Close*, 540 U.S. 749 (2004); *Edwards v. Balisok*, 520 U.S. 641 (1997); *Wilkinson v. Dotson*, 544 U.S. 74 (2005).
[31] *Queen v. Miner*, 530 F.3d 253, 254 n.2 (3d Cir. 2008).
[32] *See Wolff v. McDonnell*, 418 U.S. 539, 564-65 (1974).
[33] *See Crosby v. Piazza*, 465 F. App'x 168, 171-72 (3d Cir. 2012) (citing *Wolff*, 418 U.S. at 563-71).

7

satisfies the minimum requirements of procedural due process when the findings of the prison disciplinary board are supported by "some evidence" in the record.[34] This standard is minimal and does not require an examination of the entire record, an independent assessment of the credibility of witnesses, or a weighing of the evidence.[35] The standard is simply whether "there is any evidence in the record that could support the conclusion reached by the disciplinary board."[36]

Petitioner was provided with all the due process safeguards identified in *Wolff v. McDonnell*. Petitioner received written notice of the charges against him at least twenty-four hours prior to the hearings; he had an opportunity to call witnesses and present evidence in his defense, which he declined; he had an opportunity to receive assistance from a representative, which he also declined; and he received a written statement of the evidence relied on and the reasons for the disciplinary action.[37] As to Petitioner's contention that the DHO was biased against him, the Court finds that, to the contrary, there is no evidence to support a conclusion that the DHO was in any way biased against him.[38] As Petitioner correctly points out in his brief, in order to ensure impartiality, the DHO may not be the victim, witness, investigator, or otherwise significantly involved in the incident.[39] Petitioner makes no allegation,

---

[34] *Lang v. Sauers*, 529 F. App'x 121, 123 (3d Cir. 2013) (citing *Superintendent v. Hill*, 472 U.S. 445, 454 (1985)).
[35] *Id.* (citing *Thompson v. Owens*, 889 F.2d 500, 502 (3d Cir. 1989)).
[36] *Id.* (quoting *Hill*, 472 U.S. at 455-56).
[37] *See Wolff*, 418 at 563-71.
[38] EXPLAIN
[39] *See* ECF No. 2 at 9 (citing 28 C.F.R. 541.8(b)).

8

however, that the DHO had any involvement in the incident. Rather, Petitioner argues that the DHO "has considerable contact with individuals involved in the case" as well as "direct involvement . . . of the events." Although the DHO was naturally involved in the disciplinary process, there is no evidence that the DHO had any involvement in the incident or was a victim, witness, or investigator. Petitioner thus appeared before an impartial decision-making body, satisfying the final due process guarantee identified in *Wolff*.

Petitioner additionally argues that the incident report was untimely and was reissued. Petitioner fails to demonstrate, however, how this alleged procedural defect could constitute a due process violation by demonstrating prejudice. A technical issue of non-compliance with BOP regulations does not violate due process, and a procedural error at a disciplinary hearing is only actionable if the petitioner suffers prejudice resulting from the error.[40] Here, the Court finds no merit to Petitioner's technical defect argument because Petitioner has failed to demonstrate or identify any prejudice resulting from the alleged defect. Petitioner alleges that he was prejudiced in the delay of time between the incident and the issuance of the incident report because, had the incident report been issued earlier, Petitioner could have sought out witnesses to confirm his presence on the prison's grounds at the

---

[40] *See Millhouse v. Bledsoe*, 458 F. App'x 200, 203 (3d Cir. 2012); *Obiegbu v. Werlinger*, 488 F. App'x 585, 586 (3d Cir. 2012) (citing *Wilson v. Ashcroft*, 350 F.3d 377, 380–81 (3d Cir. 2003)).

9

time the trail photo was taken. Petitioner fails to explain, however, why he was unable to seek out these witnesses after a short delay or how such witnesses would overcome the weight of the evidence including both the trail camera photo and Petitioner's admission that he had left grounds previously. As such, the Court finds that Petitioner has not demonstrated prejudice sufficient to transform technical noncompliance into a constitutional violation.

Petitioner also asserts that the DHO was improperly relied on confidential information. In point of fact, the DHO report indicates that no confidential information was considered or relied upon by the DHO.[41] As the Respondent points out in the response, the language in Section E appears to be standard and does not indicate that confidential information was relied upon in this case as there is a "N/A" at the end of Section E.[42] Had confidential information been used, the "N/A" would not be there, and Petitioner provides no credible allegation or evidence that any such confidential information was used. There is no merit to this argument.

To the extent that Petitioner argues that the decision of the DHO was not supported by the record, the Court finds that there is some evidence in the record to support the DHO's decision. This Court's role is limited to determining whether "some evidence" exists in the record to support the DHO's decision; the Court does

---

[41] *See* ECF No. 7-1 at 16 (Section E).
[42] *Id.*

not reassess the evidence, take new evidence, or evaluate witness credibility.[43] In this matter, the DHO relied on the incident report, which included Petitioner's admission that he had left grounds before, the BOP's inmate photo of Petitioner, a comparison of that photo to the trail camera photo, and the satellite map of the FCI Schuylkill grounds. Because there is some evidence in the record to support a violation of Code 200, Petitioner's due process rights were not violated and he is not entitled to habeas relief.

Finally, to the extent Petitioner also argues that the loss of twenty-seven (27) days of good time credit violates the Eighth Amendment because it is grossly disproportionate to the severity of the offense,[44] the Court notes that it is within the range of available sanctions for a violation of Code 200.[45] As such, the Court finds that the sanction imposed on Petitioner did not violate the Eighth Amendment.

---

[43] *See, e.g.*, *McGee v. Scism*, 463 F. App'x 61, 62 (3d Cir. 2012) ("The 'some evidence' standard does not require examination of the entire record, independent assessment of the credibility of witnesses, or weighing of the evidence."); *Perez v. Rectenwald*, No. 12-cv-2114, 2013 WL 5551266, at *4 (M.D. Pa. Oct. 8, 2013) ("The Court's responsibility under *Hill* is not to weigh this evidence or assess its probative value, but merely to determine that at least some evidence exists to support the conviction").

[44] *See Rummel v. Estelle*, 445 U.S. 263, 271-74 (1980).

[45] *See* 28 C.F.R. § 541.3. *See also Shelton v. Jordan*, 613 F. App'x 134, 135 (3d Cir. 2015) ("[g]iven the severity of [petitioner's] offenses, and because the sanctions fall within the applicable range permitted by the regulation, we conclude that the punishment here did not violate the Eighth Amendment").

## III. CONCLUSION

For the reasons set forth above, the Petition will be denied. An appropriate Order follows.

BY THE COURT:

*s/ Matthew W. Brann*
Matthew W. Brann
United States District Judge